FRANCIS v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY.

Opinion delivered March 11, 1912.

RELEASE—WHEN BINDING.—A release of liability for personal injuries, executed to a master by a servant for a valuable consideration and without fraud or misrepresentation, will be upheld.

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Hart, Mahaffey & Thomas* and *L. A. Byrne,* for appellant.

1.   The record does not disclose upon what grounds the court took the case away from the jury.   If it did so on the grounds that appellant assumed the risk, then its action was in the face of the statute.   "Safety Appliance Act," §§ 2, 8; 86 Ark. 244.

2.   It could not legally take the case away from the jury on the grounds of contributory negligence because that is a question solely for the jury unless the undisputed facts are such as constitute contributory negligence.   82 Ark. 11; 87 Ark. 443; 90 Ark. 453; 91 Ark. 388; 93 Ark. 15;   See also 220 U. S. 580; 92 Ark. 554; 205 U. S. 1; 129 Fed. 522; 165 Fed. 869; 174 Fed. 399; 135 Fed. 122; 170 Fed. 1014; 53 Atl. 90.

3.   On the question of the release, this case is controlled by *Railway* v. *Hambright,* 87 Ark. 614.

*H. S. Powell, E. B. Kinsworthy* and *W. E. Hemingway,* for  appellee.

1.   If there was any failure to maintain the couplers so as to make automatic couplings, such failure was not the cause of the injury.   It resulted from an unnecessary attempt to make a coupling by use of the foot, a thing which appellee had no reason to expect, and the resultant injury was not a direct or proximate consequence of the condition of the coupler. 90 Ark. 210.

2.   It is conceded that, if the case comes within the Safety Appliance Act, the rule of assumed risk does not apply; but there is no proof that the car was being used in interstate commerce at the time of the injury, and the case is not controlled by that act.   Hence the rule of assumed risk does apply.

3.   The Safety Appliance Act does not refer to contributory negligence, and has no effect upon the plea of contributory negligence as a defense.   96 Fed. 298; 129 Fed. 347, 348; 220 U. S. 590, 596, 597.

Plaintiff having himself testified that it would have been less dangerous to have used his hand instead of his foot in attempting to make the coupling, and, it appearing that other

methods of making the coupling without danger could have been employed, the defense of contributory negligence was clearly made out in this case. 108 Fed. 474; 128 Fed. 529; 144 Fed. 668; 161 Fed. 719.

4. Appellant's settlement and release of his claim, if he had any, precludes recovery in this action. There are so many points of difference between the facts in the Hambright case, 87 Ark. 614, and in this, that that case can not be held as controlling here.

McCULLOCH, C. J. Appellant sued the railroad company to recover damages on account of injuries received while in the latter's service, and he appealed from an adverse judgment, the trial court having given a peremptory instruction to the jury to return a verdict in favor of the company.

Appellant was working in the railroad yards at Texarkana as switchman, and was injured while attempting to couple a car to the switch engine. The engine was equipped with an automatic coupler, which was found to be out of repair; and when appellant called his foreman's attention to this condition, he was directed to remove the knuckles from the coupler of a box car, and place same in the engine coupler. The engine was taken over to a sidetrack, where the box car was, and appellant, assisted by the foreman, took the knuckles out of the coupler on the box car and placed them in the coupler of the engine. The foreman then said: "All right; go ahead." He was directed to couple certain cars, and when he attempted to do so the knuckles were still found to be out of order, so that the coupling could not be made automatically by the impact of the cars coming together. The first and second attempt failed, and in the third attempt appellant tried, with his left foot, to push the drawhead over so that the coupler would connect, but the drawhead on the engine and the car had too much play, and by reason thereof caught his foot and crushed it. The first joint of his big toe was crushed so that it had to be amputated, and all the other toes on that foot were mashed off. He was given attention that night by the local surgeon, and the next day sent to St. Louis and placed in the hospital operated for the benefit of employees of the company. This was on July 4, 1907, and he remained in the hospital until November 2 of the same year. On that day he applied to

Doctor Vasterling, the surgeon in charge, for a discharge or "clearance," assigning as a reason that his wife was about to be confined, and that he could secure proper attention at home with his family. Doctor Vasterling objected to his discharge, but finally acceded to appellant's wishes, and gave him a letter of introduction to the claim agent of the company at St. Louis, and also gave him the following letter (omitting address), addressed to the claim agent, as his discharge:

"J. E. Francis, switchman, the bearer hereof, has this day been discharged from the St. Louis Hospital upon request, where he has been under treatment since July 4 for injuries inflicted at Texarkana on July 2, as follows: Loss of all toes left foot amputation through first phalanx great toe and at metatarso phalangeal articulations other toes, extensive loss of skin structure, dorsal and planter surface of same foot, which we consider permanent. As he is now convalescent, we send him to you for such consideration as his case seems to merit. Judging from his present condition, it will probably be..............before he is able to resume his old employment. Since he has been under our care, his conduct has been O. K. Please furnish him with transportation from St. Louis to Texarkana.

"Remarks: Francis states that his wife will be confined this month and wants to be with her now. A large granular area still remains unhealed which will probably require two to four months' treatment; says his sister is a professional nurse at a sanitarium at Texarkana, who will undertake to dress his foot at regular intervals under advice of his physician. Francis assumes all risks in going before wound is healed; also assumes all bills for expenses for medicine, dressing and treatment. He has read this clearance."

This letter was read to appellant by Doctor Vasterling, and and delivered to him to be handed to the claim agent, Mr. Jones, which was done. The claim agent offered appellant $600 in settlement, or, as appellant stated, to pay for his loss of time, and this he at first declined, but on the next day accepted it and executed to the company a written release reciting that he accepted the sum of $600 in full release of all claims against the company by reason of his injury.

He returned to his home in Texarkana, and was there

treated by other surgeons, and it was afterwards found necessary to amputate the foot, which was done and he was unable, on the account of the loss of his foot, to secure satisfactory employment.

Appellee denied the allegations of negligence with respect to the coupling of the engine, and also pleaded contributory negligence and assumption of risk on the part of appellant, and pleaded said release in bar of appellant's right to recover any more damages.

Appellant, by an amendment to his complaint, alleged that "his signature was obtained to said release through the fraudulent representations of the defendant's surgeon and the claim agent as to the extent of his injuries, that he would be ready for service in two months, and employment would be waiting him at Texarkana, and, relying upon these statements, he was induced to sign the release."

The case was tried before the jury, and, as before stated, the court gave a peremptory instruction in favor of appellee.

Learned counsel for appellant attempt to bring the facts of his case within the rule laid down by this court in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Hambright*, 87 Ark. 614, where it was held that a settlement with an injured employee, based upon untrue representations made by the company's surgeon as to the extent of the injuries, was not binding on said employee, who subsequently repudiated the settlement and sued for damages. The letter of Doctor Vasterling, when read in the light of the attending circumstances, can not be construed to amount to a representation as to the extent of his injuries. In the Hambright case it appeared that the plaintiff's injury was a very grievous one, and that the extent of it, as to permanency, was well known to the surgeon, but the jury found that the surgeon represented to the plaintiff that the injury was slight and that he would be well in a short time. There was a positive and affirmative representation that the injury was very slight. In the present case the surgeon merely stated that the unhealed area would require from two to four months' treatment, and added that appellant's sister, being a professional nurse at a sanitarium in Texarkana, could dress the foot at regular intervals. In the portion of the letter, which appeared to have been written upon a printed

blank, where there was a space for stating the probable duration of the injury, the blank was left unfilled, which shows that the surgeon was not through with the case, and did not attempt to give an opinion as to the full extent of the injury. Appellant was not finally discharged as a well man, and the surgeon was not holding out to him that he was cured, but the letter is more in the nature of an excuse or a reason why he should be allowed to leave the hospital before he recovered. The letter expressly stated that appellant assumed all risk in going—leaving the hospital before his wounds were healed. It should not, and can not, we think, be made the basis of a charge of untrue representations concerning the state of his injury. The fact that appellant's injury did not heal as rapidly as he anticipated, and that it was later found necessary to amputate his foot, does not prove that there was a misrepresentation of facts by Doctor Vasterling, or even a mistake as to his diagnosis.

No other attack is made upon the release, and we are of the opinion that the circuit court was correct in holding that this attack was not sustained by the evidence.

Other questions in the case need not be discussed, for appellant was bound by his release, and could not recover any more damages.

Affirmed.